UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  22-mj-02982-Torres

UNITED STATES OF AMERICA

v.

ERNESTO CRUZ GRAVERAN,

Defendant.
_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  Yes   X   No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes   X   No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY:  /s/ Michael B. Homer
MICHAEL B. HOMER
Assistant United States Attorney
Court ID No. A5502497
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9289
Michael.Homer@usdoj.gov

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ERNESTO CRUZ GRAVERAN,<br><br>*Defendant(s)* | )<br>)<br>)   Case No.  22-mj-02982-Torres<br>)<br>)<br>) |

### CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  February 2022 through April 2022  in the county of  Miami-Dade  in the
 Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1347 | Health care fraud |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

                                                            */s/ Carlos Suarez* ID #4727
                                                            *Complainant's signature*

                                                            Special Agent Carlos Suarez, HSI
                                                            *Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  Telephone.

Date:  June 9, 2022
                                                            *Judge's signature*

City and state:  Miami, Florida  Hon. Edwin G. Torres, U.S. Chief Magistrate Judge
                                                            *Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Carlos Suarez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), employed as such since April 2019. I previously served as a Special Agent with Health and Human Services, Office of the Inspector General ("HHS-OIG") from March 2017 through March 2019, and as a Special Agent with HSI from August 2010 through February 2017. I am currently assigned to the HSI Miami, Document and Benefit Fraud Task Force. My duties include conducting criminal investigations involving violations of various federal laws, including the statutes which criminalize identity theft, money laundering, and various types of benefit fraud. Finally, I have completed the Criminal Investigator Training Program course, as well as numerous advanced courses at the Federal Law Enforcement Training Center.

2. This Affidavit is submitted for the limited purpose of establishing probable cause that ERNESTO CRUZ GRAVERAN ("CRUZ GRAVERAN"), in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in violation of Title 18, United States Code, Section 1347.

3. The facts contained in this Affidavit are based on my personal knowledge and observations, as well as facts relayed to me by other law enforcement officers, witnesses, and

documents. This Affidavit does not contain all the facts of this investigation known to me or to other law enforcement personnel. Rather, it sets forth only those facts sufficient to establish probable cause in support of a criminal complaint charging CRUZ GRAVERAN with health care fraud, in violation of Title 18, United States Code, Section 1347.

## **THE MEDICARE PROGRAM**

4. The Medicare Program ("Medicare") is a federal health care program that provides free or below-cost health care benefits to individuals who are sixty-five years of age or older or disabled. The benefits available under Medicare are governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversees and administers Medicare. Individuals who receive benefits under Medicare are commonly referred to as Medicare "beneficiaries."

5. Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

6. Medicare is subdivided into multiple program "parts." Medicare Part A covers health care services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covers physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

7. DME is equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, back braces, knee braces, wheelchairs, nebulizers, and oxygen concentrators.

8. Medicare reimburses DME companies for items and services rendered to beneficiaries. To receive payment from Medicare, providers must submit or cause the submission

of claims to Medicare.

9. A Medicare claim for DME reimbursement is required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

10. Medicare reimburses claims for DME only if the DME was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

## THE DEFENDANT AND A RELATED ENTITY

11. Xiko Enterprises ("Xiko") is a Florida corporation located at 1840 West 49th Street, Suite 737, Hialeah, Florida, that purportedly provides DME to Medicare beneficiaries.

12. CRUZ GRAVERAN, a resident of Miami-Dade County, is the president and registered agent of Xiko.

## PROBABLE CAUSE

13. From on or about January 2022, through on or about April 2022, Medicare received complaints from beneficiaries alleging that Xiko was fraudulently billing Medicare for DME that the beneficiaries never received, requested, or needed.

14. For example, on or around February 22, 2022, Xiko submitted claims totaling approximately $7,000 to Medicare for various DME purportedly provided to beneficiary C.F., specifically, collagen and hydrocolloid dressings. Medicare paid Xiko approximately $5,600 for these claims.

15. Law enforcement officers interviewed C.F., who confirmed that she did not receive, request, or need any of this DME. C.F. further stated that she had never ever heard of Xiko, nor did she know the physician, Dr. A.B., who purportedly prescribed this DME to C.F. according to the claims submitted by Xiko.

16. Similarly, on or about February 22, 2022, Xiko submitted claims totally approximately $7,000 to Medicare for various DME purportedly provided to beneficiary F.C., specifically, collagen and hydrocolloid dressing (i.e. the same DME purportedly provided by Xiko to the beneficiary identified above). Medicare paid Xiko approximately $5,600 for these claims.

17. Law enforcement officers interviewed F.C., who confirmed that he did not receive, request, or need any of this DME. F.C. further stated that he had never heard of Xiko, nor did he know the physician, Dr. A.B. (i.e. the same physician identified above), who purportedly prescribed this DME to F.C. according to the claims submitted by Xiko.

18. Medicare claims data indicates that Dr. A.B. purportedly prescribed DME for approximately 145 beneficiaries on whose behalf Xiko had billed Medicare for DME. Xiko billed Medicare approximately $1,163,585 for DME purportedly provided to these approximately 145 beneficiaries, and Medicare paid Xiko approximately $777,911.

19. A representative from Dr. A.B.'s medical practice informed law enforcement officers that none of these approximately 145 beneficiaries were in fact patients of Dr. A.B.

20. Additionally, on or about April 12, 2022, and on or about April 25, 2022, Xiko submitted claims totally approximately $31,900 to Medicare for various DME purportedly provided to beneficiary A.W., specifically, collagen and hydrocolloid dressing (i.e. the same DME purportedly provided by Xiko to the beneficiaries identified above), as well as knee orthosis, spinal

orthosis, wrist orthosis, and a blood glucose monitor. Medicare paid Xiko approximately $9,100 for these claims.

21. Law enforcement officers interviewed A.W., who confirmed that she did not receive, request, or need any of this DME. A.W. further stated that she had never ever heard of Xiko, nor did she know the physician, Dr. J.S., who purportedly prescribed this DME to A.W. according to the claims submitted by Xiko.

22. A review of Medicare claims data revealed that, from on or about February 14, 2022, through on or about April 28, 2022 (hereinafter, the "Relevant Period"), Xiko submitted claims for DME to Medicare totaling approximately $4.2 million, and that Medicare paid Xiko approximately $2.1 million for those claims.

23. CRUZ GRAVERAN was the sole owner of Xiko during the Relevant Period, and caused the submission of the fraudulent health care claims referenced above, as demonstrated by the following:

   a. During the Relevant Period, CRUZ GRAVERAN was the sole owner and signor of Xiko's corporate bank account—JPMorgan Chase ("JPMC") account number ending -3331—which received payment from Medicare for the claims identified above;

   b. CRUZ GRAVERAN was listed in records obtained from the Florida Department of State, Division of Corporations as the sole authorized person, registered agent, and president of Xiko during the Relevant Period; and

   c. CRUZ GRAVERAN was listed in the Medicare enrollment documents for Xiko as the sole owner and authorized official of Xiko during the Relevant Period.

5

24. On or about May 20, 2022, law enforcement officers received a notification that CRUZ GRAVERAN, who is a Cuban citizen, was scheduled to depart on a flight from Miami, Florida, to Havana, Cuba, on or about May 22, 2022.

25. On or about May 20, 2022, law enforcement officers approached CRUZ GRAVERAN on the swale of his residence and read CRUZ GRAVERAN his *Miranda* rights, which he waived. CRUZ GRAVERAN then admitted that he was the nominee owner of Xiko, that he knew Xiko was in the DME business, that he had been paid by an associate to use his name on the Xiko corporate records and bank account, that he had signed numerous checks drawn from the Xiko corporate bank account at the behest of this same associate, that he had cashed those checks at a certain check cashing store at the behest of this same associate, and that he had subsequently delivered all the cash to the same associate. CRUZ GRAVERAN stated that these checks ranged from approximately $60,000 to $90,000, and that he was cashing checks at the check cashing store up to three times per week during the Relevant Period.

26. Following this interview with law enforcement officers, CRUZ GRAVERAN agreed to cooperate with law enforcement's investigation into the health care fraud scheme described above. Law enforcement officers detained CRUZ GRAVERAN's passport.

27. On or about June 8, 2022, CRUZ GRAVERAN was encountered by the United States Coast Guard and U.S. Customs and Border Protection officers on a broken-down jet ski in the waters south of Key West. CRUZ GRAVERAN was encountered on that jet ski along with one other individual, who is known to law enforcement to be an alien smuggler. The jet ski was outfitted with a special fuel cell to allow for long trips, and within the compartments of the jet ski, law enforcement discovered bottles of water and food which appeared to be intended for a long trip.

6

Based on the foregoing, I believe it is probable that CRUZ GRAVERAN was in fact fleeing to Cuba aboard the jet ski to evade prosecution.

## CONCLUSION

28.     Based on the foregoing, I respectfully submit that there is probable cause to believe that CRUZ GRAVERAN has committed health care fraud, in violation of Title 18, United States Code, Section 1347.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Carlos Suarez*
Carlos Suarez
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of
Fed. R. Crim. P. 4.1 by Telephone this  9th   day of June 2022.

_____
HONORABLE EDWIN G. TORRES
UNITED STATES CHIEF MAGISTRATE JUDGE

7